IN THE CIRCUIT COURT OF THE
NINTH JUDICIAL CIRCUIT, IN AND
FOR ORANGE COUNTY, FLORIDA

CASE NO.:

LAKE BUENA
VISTA VACATION RESORT, L.C.,
a Florida limited liability company,

        Plaintiff,

vs.

GOTHAM INSURANCE COMPANY,
a New York corporation, and
COASTAL TITLE SERVICES, INC.,
a Florida corporation,

        Defendants.
_____/

6:12-cv-1680-Orl-31DAB

## COMPLAINT

Plaintiff, LAKE BUENA VISTA VACATION RESORT, L.C. (hereinafter referred to as "LBVVR"), by and through its undersigned counsel and pursuant to applicable *Florida Rules of Civil Procedure*, hereby sues and files this Complaint against Defendants, GOTHAM INSURANCE COMPANY and COASTAL TITLE SERVICES, INC., and states as follows:

### Jurisdictional Allegations

1. This is an action for damages in excess of $15,000.00, excluding costs, attorneys' fees, and interest.

EXHIBIT A

2. LBVVR is a Florida limited liability company with its principal address and place of business in Orange County, Florida. LBVVR is additionally acting on behalf of and as agent for Weston Orlando Park, Inc., and is entitled prosecute this action and to recover on its behalf all damages recoverable as a result of the causes of action set forth herein.

3. Defendant, GOTHAM INSURANCE COMPANY (hereinafter referred to as "Gotham"), is a New York corporation, located in New York, New York that transacted business in Orange County, Florida, at all material times to this action.

4. Defendant, COASTAL TITLE SERVICES, INC. (hereinafter referred to as "Coastal Title"), is a Florida corporation that transacted business in Orange County, Florida.

5. Venue is proper in Orange County, Florida, pursuant to Section 47.011, *Florida Statutes*.

## Background Allegations

### The Insurance Policy at Issue

6. Gotham issued to Coastal Title, the named insured, an insurance policy providing professional liability and personal injury. A true and correct copy of that policy (the "Policy") is attached hereto and incorporated herein as Exhibit "A."

7. The policy period for the Policy is March 1, 2007, through March 1, 2008.

8. Section I of the Policy provides in pertinent part that Gotham shall pay "all sums which the INSURED shall become legally obligated to pay as DAMAGES because of:

> A. Any act, error or omission of the INSURED in rendering or failing to render PROFESSIONAL SERVICES for others as a:

2

       i. Title insurance agent, title abstractor, title searcher, escrow agent or closing agent…

9.   Section IV of the Policy defines "PROFESSIONAL SERVICES" as follows:

…those services necessary to the conduct of the NAMED INSURED'S business activities as a title insurance agent, title abstractor, title searcher, escrow agent or closing agent. PROFESSIONAL SERVICES shall include the following:

  a. The sale and/or servicing of products made available by a title insurance company.

  b. Providing:

      a. Advice, consultation, or administration—other than third party claims administration—for products made available by a title insurance company…

. . . .

10.   Section IV of the Policy defines "DAMAGES" as "all sums which the INSURED is legally obligated to pay for any claim to which this insurance applies and shall include judgments and settlements…"

11.   As described below, Gotham is liable to LBVVR for the payment of a judgment that LBVVR has obtained against Coastal Title for Coastal Title's "act, error, or omission" in "rendering or failing to render" "PROFESSIONAL SERVICES" regarding the San Marco Resort, a planned luxury resort in Orlando, Orange County, Florida. Such acts, errors, and/or omissions by Coastal Title are set forth below and included, but are not limited to, (a) failing to properly advise LBVVR regarding the proper terms of the Reservation Agreements, Contracts for Sale and Purchase, and escrow agreements, (b) failing to properly supervise Ira Hatch, Jr. ("Ira Hatch"), and (c) failing to advise and warn LBVVR of the risks inherent in permitting Coastal Title to hold such escrow monies. All

such acts, errors, and/or omissions were done by, through, or under Ira Hatch and/or Marjorie Hatch, who were at all relevant times acting within the express authority granted to them by Coastal Title.

### Coastal Title and the San Marco Resort

12. In 1996, Ira Hatch, a now incarcerated and disbarred Florida attorney, and his wife, Marjorie Hatch, formed Coastal Title, a Florida corporation, to sell and service title insurance products, and render advice, consultation, and administration of those products.

13. At all times material to this action, Ira Hatch was the vice-president of Coastal Title and Marjorie Hatch was its president.

14. In 2003, Ira Hatch, while the vice-president of Coastal Title, discussed with LBVVR assembling a team to develop the San Marco Resort. Coastal Title did in fact become a member of the development team of San Marco Resort, and owed a fiduciary duty of good faith, loyalty, honesty, and due care in providing advice to LBVVR.

15. A significant part of that team was Coastal Title, which would issue title insurance policies for the San Marco units; accept and hold in escrow pre-closing sales price deposits; and advise and consult with LBVVR regarding those matters.

16. Also, as an officer of Coastal Title and an attorney, Ira Hatch, among other things, advised and prepared for LBVVR, Reservation Agreements and Purchase Agreements for San Marco condominium units. A representative Reservation Agreement and Purchase Agreement are attached hereto and incorporated herein as Composite Exhibit "B." Ira Hatch was also an attorney and business consultant representing LBVVR, who had a gross conflict of interest in the transaction by acting on behalf of Coastal Title

(as an officer of Coastal Title), and also acting as counsel for LBVVR in preparing these important sale, escrow, and reservation agreement documents.

17. Ira Hatch, as an attorney and Coastal Title officer, advised LBVVR to enter escrow agreements with Coastal Title and to name Coastal Title as the escrow agent in the reservation agreements and purchase contracts.

18. Ira Hatch, however, acting within his scope of authority and on behalf of Coastal Title, fell far below the standard of care required of him, and negligently failed to properly draft such documents so as to adequately protect LBVVR, including but not limited to failing to identify in the Reservation Agreements and the Purchase Agreements the particular entity that would issue title insurance and the entity that would underwrite that insurance for the respective condominium units to be sold.

19. LBVVR began marketing the San Marco in mid-2004.

20. Thereafter, various people entered Reservation Agreements and Purchase Agreements.

21. Based upon Ira Hatch's advice to LBVVR as an attorney and an authorized Coastal Title officer, LBVVR entered Reservation Agreements for 232 units. Hatch, acting as an authorized officer of Coastal Title with a conflict of interest due to his dual representation of LBVVR and as a business consultant to LBVVR, included in the Reservation Agreements that each buyer would deposit $15,000.00 to be held in escrow by Coastal Title.

22. The first of the 6 reservation deposits at issue was paid to Coastal Title on December 30, 2004, and the last on May 31, 2005. Those deposits amount to $90,000. A true and correct copy of a document reflecting the deposits paid under the Reservation

Agreements and Purchase Agreements is attached hereto and incorporated herein as Exhibit "C."

23.     Based upon Ira Hatch's advice as an attorney and authorized Coastal Title officer, LBVVR also entered Purchase Agreements for 13 condominium units. Ira Hatch included in the Purchase Agreements that each buyer would deposit a specified amount to be held in escrow by Coastal Title.

24.     The first of the Purchase Agreement deposits at issue was paid to Coastal Title on August 5, 2004, and the last on February 23, 2007. Those deposits amounted to $559,562.53. See Exhibit "C."

25.     From August 2004, through September 2007, Coastal Title stole at least 6 of the aforementioned Reservation Agreement deposits and at least 13 of the Purchase Agreement deposits from Coastal Title's escrow trust account. LBVVR had a direct and tangible interest in the security of such funds, including the equitable right to receive such funds.

26.     During the period of those thefts, Coastal Title negligently failed to supervise Ira Hatch, which resulted in the thefts. This failure is especially egregious considering that Coastal Title's president – Hatch's wife, Marjorie - was so closely situated to Hatch. Coastal Title also failed to advise LBVVR of the thefts and its negligent failure to supervise.

27.     Not knowing about the thefts, LBVVR, in addition to entering the Reservation Agreements and Purchase Agreements, fully committed to advancing and completing the San Marco. This includes expending several millions of dollars into its development.

28.   After LBVVR expended all of those resources and monies into the San Marco, it further sought to sell and/or market the San Marco. In fact, LBVVR entered negotiations to sell the San Marco and underlying land for a substantial profit to an entity represented by Tom Assaly (that buyer shall hereinafter be referred to as "Assaly").

29.   The negotiations became very serious, and Ira Hatch informed LBVVR that a deal with Assaly was approved. Under such a deal, LBVVR would take title to the San Marco before the closing and be the seller to Assaly.

30.   On Labor Day weekend of 2007, Ira Hatch, as an officer of Coastal Title and an attorney, finally informed LBVVR that there were problems with Coastal Title. Those problems turned out to be the above-referenced thefts.

31.   Assaly's company, having learned this information, immediately withdrew from the agreement to purchase the San Marco and underlying land.

32.   Additionally, despite having invested millions of dollars into the San Marco, because of Ira Hatch's failure to disclose the thefts, LBVVR realized that it could not proceed to complete the San Marco. LBVVR accordingly had no choice but to exercise the option to terminate the outstanding Purchase Agreements under paragraph 7 of those agreements.

33.   Based upon Ira Hatch's and Coastal Title's failure to advise and negligent supervision, including their failure to disclose the improprieties to LBVVR, the deal with Assaly's company collapsed, as Assaly's company immediately withdrew, and the San Marco completely failed, causing LBVVR to lose millions of dollars. Irrespective of the Assaly transaction, no other transaction could be consummated as a result of Coastal Title's failure to advise LBVVR of the thefts. As a direct and proximate result of such

misconduct, LBVVR was severely damaged, including special damages such as lost profits.

34. On October 4, 2007, Coastal Title timely and properly served upon Gotham a notice of a claim under the Policy for the suffered losses.

35. On October 18, 2007, Gotham denied coverage, asserting that the loss was not payable under the theft exclusion under the Policy.

36. Based upon the damage that LBVVR suffered, it brought claims against Ira Hatch, Hatch & Doty, Coastal Title, Lawyers Title Insurance Corporation ("Lawyers Title"), and Attorneys' Title Insurance Fund, Inc. ("Attorneys' Title"), in case no. 08-CA-15981, in Orange County, Florida, Circuit Court. ("Lawyers Title Case")

37. LBVVR settled that action with Ira Hatch and Hatch and Doty.

38. LBVVR obtained a Final Summary Judgment against Coastal Title in that case in the amount of $20,801,612.80, plus post-judgment interest. A true and correct copy of the Final Summary Judgment is attached hereto and incorporated herein as Exhibit "D."

39. Paragraph 4 of the Final Summary Judgment provides that:

> LBVVR is entitled to all rights to collect any and all property of COASTAL TITLE SERVICES, INC., tangible and intangible, including without limitation, any and all rights, causes of action, proceeds, and/or choses in action regarding the insurance proceeds from...policy number 42272PL207, issued by Gotham Insurance Company/Mutual Marine Office, Inc...., and all such property is the sole and exclusive property of LBVVR.

Policy number 42272PL207 is the Policy referenced above and the subject of this lawsuit.

40. Based upon the Hatches' misconduct, Coastal Title is an inactive corporation and, other than the claim under the Policy that is the subject of this action, has no attachable assets to satisfy LBVVR's judgment.

41. Based upon his misconduct, Ira Hatch is incarcerated under an approximately 30 year sentence.

42. In the Lawyers Title Case, LBVVR's claims against Lawyers Title and Attorney's Title were under Section 627.792, Florida Statutes. That statute provides that title insurers are liable for the thefts, defalcations, misappropriations, and conversions of funds held in trust under Section 626.8473, Florida Statutes, by a licensed title insurance agent, such as Coastal Title.

43. Section 626.8473(1) provides that "(a) title insurance agent may engage in business as an escrow agent as to funds received from others to be subsequently disbursed by the title insurance agent in connection with real estate closing transactions involving the issuance of title insurance binders, commitments, policies of title insurance, or guarantees of title..."

44. On January 25, 2011, the trial court in the Lawyers Title Case, entered final summary judgment against LBVVR, ruling in pertinent part that:

> . . . .
>
> a. Final Judgment is hereby entered in favor of Third Party Defendants Lawyers Title and The Fund. Florida Statutes section 627.792 is not applicable in this case. Coastal Title Services, Inc. ("Coastal") did not hold any of the escrow deposits "in trust" pursuant to Fla. Stat. § 629.8473. *Winkler v. Lawyers Title Ins. Corp.*, 41 So.2d 414 (Fla. 3d DCA 2010)
>
> . . . .

...

A true and correct copy of that Final Judgment is attached hereto and incorporated herein as Exhibit "E."

45. In <u>Winkler</u>, a declaratory relief case filed in Miami-Dade County, Circuit Court by Lawyers Title against certain San Marco unit buyers, the Third District Court of Appeal ruled that Lawyers Title was not liable for defalcation under Section 627.792, because the Reservation Agreements and Purchase Agreements prepared by Hatch, failed to expressly identify Coastal Title as the entity that would issue title insurance for the San Marco units.

46. On August 21, 2012, the Fifth District Court of Appeal per curiam affirmed the Final Summary Judgment against LBVVR in the Lawyers Title Case, meaning that LBVVR now cannot collect any of its damages from Lawyers Title or Attorneys' Title.

47. If Ira Hatch, as an officer of Coastal Title, had properly named or otherwise identified Coastal Title as the title insurance agent and Lawyers Title and/or Attorney's Title as the underwriters in the Reservation Agreements and Purchase Agreements, Lawyers Title and Attorneys' Title would have been liable to LBVVR for the defalcations. Coastal Title, as a member of the LBVVR development team, and therefore as an advisor of LBVVR with a duty to use reasonable care in assisting in protecting LBVVR in drafting documents; with a duty of honesty and fair dealing; and with other fiduciary duties consistent with Coastal Title's advisory relationship with LBVVR.

48. The <u>Winkler</u> result would have been different, and the trial court in the Lawyers Title Case filed by LBVVR would not have entered summary judgment against

LBVVR. Lawyers Title and Attorney's Title, two indisputably solvent entities, would have accordingly been liable to LBVVR for all of its losses that it suffered.

49. On July 3, 2012, LBVVR, now the owner of all rights under the Policy pursuant to its judgment against Coastal Title, sent a letter to Mutual Marine Office, Inc., demanding the proceeds under the Policy.

50. On July 30, 2012, in spite of LBVVR's losses directly arising from Coastal Title's failing to properly advise regarding the drafting of the relevant reservation and escrow documents; advise LBVVR to properly identify the title insurance agent and underwriter in the Reservation and Purchase Agreements or otherwise; failing to advise LBVVR of the thefts; failing to properly and adequately otherwise protect LBVVR from the misconduct of Coastal Title; and negligent supervision of Ira Hatch, Gotham Insurance Company's attorney sent a letter, again denying coverage.

51. Gotham is liable under the Policy for the damages suffered by LBVVR as a consequence of Coastal Title's aforementioned wrongs, including Coastal Title's falling below the standard of care of a reasonable person in the same or similar circumstances, and as set forth in the Final Summary Judgment entered against Coastal Title.

52. LBVVR has satisfied all conditions precedent to bringing this action.

53. LBVVR has retained the law firm of deBeaubien, Knight, Simmons, Mantzaris & Neal, LLP, to represent it in this action, and is obligated to pay these attorneys a reasonable attorneys' fee.

## COUNT I – BREACH OF CONTRACT AGAINST GOTHAM

54. LBVVR hereby incorporates by reference into this Count paragraphs 1 through 53 of this Complaint.

55. The Policy is a written contract between Coastal Title and Gotham.

56. Pursuant to the January 25, 2011, Final Judgment, LBVVR now owns all of Coastal Title's rights under the Policy.

57. Under the Policy, Gotham provided coverage to Coastal Title for Coastal Title's failure to properly advise, consult with, and supervise in providing title insurance services and products. See sections I and IV of the Policy, detailed above in paragraphs 8 and 9.

58. Coastal Title failed to properly advise LBVVR to include the identity of the title insurance agent and underwriter in the Reservation and Purchase Agreements, failed to advise LBVVR of the aforementioned thefts, and negligently supervised Hatch, which resulted in those thefts. LBVVR suffered massive damages from those wrongs and accordingly obtained the judgment referenced above against Coastal Title.

59. Sections I and IV of the Policy make clear that the Policy expressly covers those failures and the damages suffered by LBVVR.

60. Gotham is liable under the Policy for the damages suffered by LBVVR as a consequence of Coastal Title's aforementioned wrongs and as set forth in the Final Summary Judgment entered against Coastal Title. Gotham has materially breached its duty to provide coverage to Coastal Title and, by virtue of the assignment of rights resulting from the Final Judgment against Coastal Title, LBVVR, for those wrongs.

61. As a proximate result of Gotham's material breach, LBVVR has suffered substantial damages, including general and special damages. These include the non-satisfaction of any of the January 25, 2011, Final Judgment.

WHEREFORE, LBVVR respectfully requests that this Honorable Court enter a judgment against Gotham for the damages suffered by LBVVR and Coastal Title, costs, attorneys' fees, and any and all such other relief as the Court deems just and proper.

### COUNT II - DECLARATORY RELIEF AGAINST COASTAL TITLE

62. LBVVR hereby incorporates by reference into this Count paragraphs 1 through 53 of this Complaint.

63. There is a present and actual controversy between LBVVR and Coastal Title.

64. The controversy is over whether Coastal Title, in addition to its other wrongdoing, failed to properly advise LBVVR, including whether to include the identity of the title insurance agent and underwriter in the Reservation and Purchase Agreements; failed to advise LBVVR of the aforementioned thefts; and negligently supervised Hatch; all of which proximately caused damages to LBVVR, and the amount of such damages.

65. As a result of the above-described controversy, LBVVR and Coastal Title are in doubt as to their obligations. There is accordingly a bona fide, actual, present, and practical need for a declaration by this Court to resolve the above-described controversy.

66. The relief sought by LBVVR is not theoretical or advisory.

67. All interested parties are before the Court.

WHEREFORE, LBVVR respectfully requests that this Court enter a judgment: **(a)** declaring that Coastal Title failed to properly advise LBVVR to include the identity of the title insurance agent and underwriter in the Reservation and Purchase Agreements, failed to advise LBVVR of the aforementioned thefts, and negligently supervised Hatch, which

resulted in those thefts; and **(b)** granting any such other relief as this Court deems just and proper.

### DEMAND FOR JURY TRIAL

LBVVR hereby demands a jury trial on all issues so triable.

Dated: October 8, 2012.

/s/ Daniel J. O'Malley
DAVID H. SIMMONS
Florida Bar Number 240745
DANIEL J. O'MALLEY
Florida Bar Number 0124450
de Beaubien, Knight, Simmons,
Mantzaris & Neal, LLP
Post Office Box 87
Orlando, Florida 32802-0087
Telephone: (407) 422-2454
Facsimile: (407) 849-1849
Attorneys for LBVVR